UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEREMY DANIELS,

        Plaintiff,

    v.

STEVEN APONTE, et al.,

        Defendants.

Case No. 21-cv-03794-RMI

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 35

Now pending before the Court is Defendants' Motion for Summary Judgment (dkt. 35), seeking summary judgment in favor of Defendants Aponte and Cristancho (as to Plaintiff's unlawful arrest and excessive force claims) on the merits, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and on qualified immunity grounds. Plaintiff did not file an opposition, or otherwise communicate with the Court, despite being provided a reminder and an extension. The Court still looks to the merits of the Motion and for the reasons stated below, the Motion is granted.

**MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND**

Plaintiff, a former arrestee and prisoner, sued San Jose Police Officers Aponte and Cristancho pursuant to 42 U.S.C. § 1983, for unlawful arrest and excessive force. Plaintiff alleges that he was riding his bicycle on the street when the Defendants pulled alongside him in a patrol car and told him to stop. (dkt. 14 at 5-6). Plaintiff did not stop, because he did nothing wrong, and kept riding. (*Id*. at 6). Plaintiff states that Aponte struck Plaintiff with his patrol car causing an accident and injuries. (*Id*. at 6-7). Cristancho then knocked Plaintiff down and got on top of Plaintiff pressing his knees into Plaintiff further injuring him. (*Id*. at 7). Plaintiff was later convicted of 18 U.S.C. § 922(g), being a felon in possession of a firearm. (dkt. 19 at 1).

**Undisputed Facts**

The salient facts are undisputed. Defendants have submitted video evidence in support of the motion and Plaintiff has not filed an opposition to address the facts, evidence, or arguments. On November 6, 2019, Defendants were on a foot patrol at a homeless encampment in San Jose. Defs. Mot. (dkt. 35), Aponte Decl. ¶ 2, Cristancho Decl. ¶ 2. Cristancho observed Plaintiff fail to stop at a stop sign while riding his bicycle in violation of the vehicle code. Cristancho Decl. ¶ 2. Defendants got into their marked patrol car to pursue Plaintiff to cite him for violation of the vehicle code. *Id*. ¶ 3. Aponte was driving while Cristancho sat in the passenger seat. *Id*.

Defendants regained visual contact with Plaintiff and observed him fail to fully stop at another stop sign. *Id*. ¶ 4. Aponte drove behind Plaintiff and activated the patrol car's lights and sirens. Aponte Decl. ¶ 4. Plaintiff continued riding and did not stop. *Id*. Defendants then activated their body worn cameras. Aponte Decl. ¶ 3; Cristancho Decl. ¶ 3. The patrol car pulled next to Plaintiff as he rode his bicycle and Cristancho repeatedly instructed him to pull over and stop, but Plaintiff ignored those commands and continued riding. Cristancho Decl. ¶ 4. As they were closer to Plaintiff, Cristancho recognized him from a mugshot he had seen earlier that day. *Id*. ¶ 5. As part of his normal routine, Cristancho conducted a records check of known fugitives so that he could familiarize himself with individuals he might encounter with outstanding warrants. *Id*. Cristancho knew that Plaintiff had a no-bail warrant for his arrest for a parole violation and that he was a gang member and had a prior firearm related arrest. *Id*.

While still riding his bicycle, Plaintiff asked if he was under arrest and Cristancho replied that he was about to be under arrest. *Id*. ¶ 6; Ex. A, Cristancho Body Worn Camera 0:05-0:22. Plaintiff continued riding his bicycle. *Id*. Cristancho then exited the patrol car and pursued Plaintiff on foot. *Id*. Plaintiff increased speed on his bicycle and Defendants believed he was fleeing and trying to evade them. Aponte Decl. ¶ 5; Cristancho Decl. ¶ 6. Plaintiff then rode onto the sidewalk fleeing from Defendants. *Id*.

Aponte, who was still driving the patrol car with lights and sirens activated, lost sight of Plaintiff when he rode on the sidewalk due to parked vehicles. Aponte Decl. ¶ 6; Ex. A, Aponte Body Worn Camera 0:40-0:49. Aponte thought that Plaintiff may have dismounted from the

2

bicycle to flee on foot, so he pulled into a driveway on the sidewalk to set a perimeter to either block Plaintiff's escape or join the foot pursuit. *Id*. Aponte did not see Plaintiff as he turned his vehicle because he was looking in the direction he was driving. *Id*. As the patrol car stopped in the driveway, Plaintiff, who was still riding the bicycle, collided with the passenger side door and fell off the bicycle. Cristancho Decl. ¶ 6; Cristancho Body Worn Camera Slow Motion 0:31-0:48.[1]

Plaintiff immediately jumped up off the ground and continued to flee to the end of the driveway, where there was a dead end due to closed garage. Cristancho Decl. ¶¶ 6-7; Cristancho Body Worn Camera 0:23-0:32. Plaintiff then reached into his waistband and pulled out a black object and threw it over the fence. Cristancho Body Worn Camera 0:30-0:32. Aponte observed that it was a firearm and yelled, "he's got a gun" to warn Cristancho. Aponte Decl. ¶¶ 7-8; Aponte Body Worn Camera 0:52-0:57.

Defendants repeatedly ordered Plaintiff to get on the ground, but he did not comply. Aponte Decl. ¶ 9; Cristancho Body Worn Camera 0:26-0:32. Cristancho grabbed Plaintiff's right wrist with one hand and grabbed his upper body with the other hand, and after Plaintiff refused to comply and get on the ground, Cristancho tripped Plaintiff to get him on the ground so he could be taken into custody. Cristancho Decl. ¶ 8; Cristancho Body Worn Camera 0:32-0:55. Cristancho placed his knee on Plaintiff's lower buttock area for approximately 12 second, so Plaintiff could be handcuffed. *Id*. Aponte placed his knee on Plaintiff's left shoulder area for approximately 10 seconds while placing handcuffs on him. Aponte Decl. ¶ 9; Cristancho Body Worn Camera 0:40-0:50. Plaintiff continued to argue with Defendants and showed no signs of distress. Cristancho Decl. ¶ 8; Cristancho Body Worn Camera 0:50-1:10. Plaintiff had a small abrasion on his eyebrow and complained of knee pain. Cristancho Decl. ¶ 8.

Defendants recovered a 9mm semi-automatic handgun with a live round in the chamber, an empty 17-round magazine, and several rounds of 9mm ammunition. Aponte Decl. ¶ 9-10. A records check confirmed that Plaintiff was on parole for being a felon in possession of a firearm

---

[1] Defendants included a portion of Cristancho's Body Worn Camera footage that is in slow motion to show the patrol car pulling into the driveway and then Plaintiff riding his bicycle into the side of the car. Meagan Spencer Decl. Ex. A.

and had a no-bail warrant for his arrest for a parole violation. Cristancho Decl. ¶ 10. Plaintiff eventually pled guilty to a violation of 18 U.S.C. § 922(g), being a felon in possession of a firearm and served two years a result. Defendants' Request for Judicial Notice, Exs. A, B.[2]

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, a court will draw all reasonable factual inferences in favor of the nonmovant. *Id*. at 255. In deciding summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory or speculative testimony or allegations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *See e.g., Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A claim of unlawful arrest is cognizable under § 1983 for violation of the Fourth Amendment's prohibition against unreasonable searches and seizures if the complaint alleges that the arrest was without probable cause or other justification. *See Pierson v. Ray*, 386 U.S. 547, 555-558 (1967); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 n.1. (9th Cir. 2015) (absence of probable cause is essential element of a § 1983 false arrest claim). Further, a claim of unlawful

United States District Court
Northern District of California

---

[2] The Court takes judicial notice of the Court records provided by Defendants (dkt. 36). *See Reyn's Pasta Bella, LLC v. Visa USA*, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

detention or imprisonment is cognizable under § 1983 for violation of the Fourteenth Amendment's guarantee of due process if the arrest was without probable cause or other justification and the defendant knew or should have known that plaintiff was entitled to release. *See Baker v. McCollan*, 443 U.S. 137, 142-145 (1979); *Lee v. Cty. of Los Angeles*, 250 F.3d 668, 684-85 (9th Cir. 2001) (plaintiff stated due process claim where police arrested plaintiff's son without probable cause, detained him without verifying that he was the subject of warrant, despite his obvious mental incapacity, and detained him for one day before an extradition hearing, which led to his incarceration in another state for two years).

An allegation of the use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983. *See Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir. 1986), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *see also Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641-42 (9th Cir. 2018) (pro se allegations that police officers "beat the crap out of" plaintiff and caused him severe injury enough to support a legally cognizable claim under § 1983). Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *See Graham*, 490 U.S. at 394-95.

## DISCUSSION

**Unlawful Arrest**

The undisputed facts demonstrate that Defendants had probable cause to arrest Plaintiff, and they have met their burden in demonstrating that there is no genuine dispute as to any material fact and the they are entitled to judgment as a matter of law. Plaintiff did not file an opposition to refute Defendants' arguments or evidence.

The existence of probable cause for an arrest is a complete defense to a § 1983 claim alleging false arrest. *See Fortson v. Los Angles City Atty's Office*, 852 F.3d 1190, 1192 (9th Cir. 2017). Here, Defendants were justified in stopping Plaintiff due to his failure to obey traffic laws by failing to stop at multiple stop signs and because there was an outstanding warrant for his arrest. A police officer may conduct an investigatory stop when the officer has reasonable suspicion that a person is engaged in criminal activity. *United States v. Choudhry*, 461 F.3d 1097,

United States District Court
Northern District of California

1100 (9th Cir. 2006). A traffic infraction alone is sufficient to establish reasonable suspicion. *Id*. Moreover, when an officer has probable cause to believe a criminal offense has been committed in his presence—including a minor offense punishable only by a fine, such as a traffic violation—the officer may lawfully detain and arrest the suspect without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

While Plaintiff did not file an opposition, to the extent he could argue that he did stop at the stop signs and did not violate any traffic laws, Defendnats still had probable cause to arrest him based on the warrant. An outstanding arrest warrant independently supplies probable cause as a matter of law. *See Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 924, 927-28 (9th Cir. 2001).

**Excessive Force**

With respect to the excessive force claim, Defendants have also met their burden in demonstrating that there is no genuine dispute as to any material fact and the they are entitled to judgment as a matter of law. Plaintiff did not file an opposition to refute Defendants' arguments or the evidence.

Plaintiff first contends that Defendants used excessive force when he was fleeing on foot. The undisputed video evidence demonstrates that there was no excessive force. Plaintiff refused repeated commands to get on the ground and removed a gun from his waistband to throw it away. It is undisputed that after Defendants took Plaintiff to the ground and Cristancho placed his knee on Plaintiff's lower buttock area for approximately 12 second, so Plaintiff could be handcuffed, while Aponte placed his knee on Plaintiff's left shoulder area for approximately 10 seconds.

The Supreme Court held in *Graham* that, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. at 396 (internal citation omitted); s*ee also Jackson v. City of Bremerton*, 268 F.3d 646, 650, 653 (9th Cir. 2001) (finding no constitutional violation where an officer pushed the plaintiff to the ground to handcuff her and fractured plaintiff's finger in the process); *see also Kidwell-Bertagnolli v. County of Sonoma*, 2024 WL 1589468, at *6-8 (N.D. Cal. Apr. 10, 2024) (granting summary judgment where the officer released knee pressure quickly after handcuffing and holding that no reasonable

trier of fact could find an 18-second hold was more than minimal force). The *de minimis* amount of force used by Defendants to handcuff Plaintiff who was fleeing, refused commands to get on the ground, and removed a gun, does not present a Fourth Amendment claim. Defendants are entitled to summary judgment.

Aponte is also entitled to summary judgment regarding his driving of the patrol car. It is undisputed that Aponte did not strike Plaintiff with the car; he drove the car into a driveway and then Plaintiff rode his bicycle into the car and fell because there was not enough time to stop or turn. Aponte submitted a declaration stating that he lost sight of Plaintiff when he rode on the sidewalk due to parked vehicles and he thought that Plaintiff may have dismounted from the bicycle to flee on foot. Aponte pulled into a driveway on the sidewalk to set a perimeter to either block Plaintiff's escape or join the foot pursuit and did not see Plaintiff as he turned his vehicle because he was looking in the direction he was driving. Plaintiff did not submit any opposition contesting this evidence; therefore, it is undisputed that Plaintiff crashing into the car was an accident.

A Fourth Amendment seizure requires an officer's intentional acquisition of physical control. *Brower v. County of Inyo,* 489 U.S. 593, 596-97 (1989) (" . . . the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act.") Accidental or unintended contact does not constitute a seizure. *See id*.; *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (no Fourth Amendment seizure where harm results from unintentional conduct). Aponte has met his burden in demonstrating that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law because he did not intentionally use force against Plaintiff. Even assuming Aponte's actions were intentional and there was a Fourth Amendment seizure, he would be entitled to qualified immunity as discussed below.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

United States District Court
Northern District of California

United States District Court
Northern District of California

U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).  The Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality.  *See White v. Pauly*, 58 U.S. 73, 79 (2017) (per curiam); *see, e.g.*, *Kisela v. Hughes*, 584 U.S. 100, 104-08 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife, was ignoring officers' orders to drop the weapon, and was within striking distance of her housemate; prior cases on excessive force did not clearly establish that it was unlawful to use force under these circumstances, where officer may not have been in apparent danger but believed woman was a threat to her housemate).

The Court has not found a constitutional violation, and even if there was a violation, Defendants would be entitled to qualified immunity. For the unlawful arrest claim, police officers are entitled to qualified immunity if "it is reasonably arguable that there was probable cause for arrest.'" *Reed v. Lieurance*, 863 F.3d 1196, 1207 n.4 (9th Cir. 2017) (quoting *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2009)). In the instant case it is undisputed that Defendants had probable cause for an arrest. *See Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir.

2012) (reversing denial of qualified immunity when there was "no question" that officers had probable cause to believe that plaintiff had committed the *actus reus* of theft, even though reasonable people could draw different conclusions based on plaintiff's behavior).

Defendants are also entitled to qualified immunity for the force used against Plaintiff when he was fleeing on foot. It would not be clear to reasonable officer that the *de minimis* use of force in this situation would be a constitutional violation. As discussed above, Plaintiff fled on a bicycle and then on foot, refused commands to get on the ground, and removed a gun from his waistband.

Aponte is also entitled to qualified immunity for driving his car into the driveway which led to Plaintiff crashing his bicycle. In a similar situation in *Seidner v. de Vries*, 39 F.4th 591 (9th Cir. 2022), the Ninth Circuit held that a police car pulling in front of a bicyclist resulting in the bicyclist striking the police car, would require a jury to determine the reasonableness of the amount of force used. *Id*. at 601. However, the Circuit also held that the police officer was entitled to qualified immunity because the law that existed in 2020, when the incident occurred, did not clearly establish that his actions would violate the Fourth Amendment. *Id*. at 603.

*Seidner* was decided in 2022, and the underlying incident in this case, occurred in 2019. *Seidner* is controlling and for the same reasons that qualified immunity applied in *Seidner*, Aponte is entitled to qualified immunity in this case.

## CONCLUSION

Accordingly, for the reasons stated herein, Defendants' Motion for Summary Judgment (dkt. 35) is **GRANTED**. A separate judgment shall issue and the Clerk shall close this case.[3]

**IT IS SO ORDERED.**

Dated: May 27, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

---

[3] Because the Court found no constitutional violation and that Defendants are entitled to qualified immunity, the *Heck* argument will not be addressed.

United States District Court
Northern District of California